IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 21-CR-00013-RM

UNITED STATES OF AMERICA,

   Plaintiff,

v.

**ANDRES CUETARA**,

   Defendant.

---

### DEFENDANT'S BRIEF RE: DETERMINATION OF INCOMPETENCY

---

  Andres Cuetara, through his attorney, Assistant Federal Public Defender Laura H. Suelau, submits the following brief pursuant to this court's Order. Doc. 108. ("counsel shall file briefs stating the consequences of a determination of incompetency by the Court.").

**I. Relevant Procedural Background.**

  On June 3, 2022, undersigned counsel filed an Unopposed Motion for Evaluation of Competency pursuant to 18 U.S.C. § 4241(b). On July 7, 2022, this court found "[p]ursuant to 18 U.S.C. § 4241(a), there is reasonable cause to believe that the Defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." Doc. 82. The court ordered a psychiatric or psychological examination be conducted, and a report be filed consistent with 18 U.S.C. § 4247(b) and (c). *Id.* The court designated Dr. Robert Q. Pollard, Jr., Ph.D. to perform the examination and file the report.

  That evaluation was completed, and Dr. Pollard submitted his report and findings to this court on October 12, 2022. Dr. Pollard opined that Mr. Cuetara is not competent to stand trial. Doc. 102. Dr. Pollard's report focused on Mr. Cuetara's "permanent impairment in his expressive and receptive

language abilities," and deficits in "fund of information and other cognitive sequalae…[resulting in] minimal knowledge and abilities needed to manifest competency to stand trial." *Id.* Dr. Pollard concluded those deficits (and others outlined in his report) made Mr. Cuetara "presently unable to understand the nature and consequences of the proceedings against him, [with] insufficient ability to assist in his defense…" Dr. Pollard also opined that there is "highly questionable potential for these conditions to be remediated." *Id.*

This court set a competency hearing pursuant to § 4241(c) and § 4247(d) for July 27, 2023.

**II. The three-step competency process.**

The Tenth Circuit has outlined a "three-step process" for § 4241 proceedings. *See United States v. Deters,* 143 F.3d 577, 580 (10th Cir. 1998). The first step is the court's decision whether there is "reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent..." As outlined *supra,* that step is complete. Doc. 82.

The July 27th hearing is the beginning of step two: "At step two, the court conducts a hearing and uses the psychological reports from the step-one examination to determine whether the defendant is able to understand the nature and consequences of the proceedings against [him]." *Deters,* 143 F.3d at 580. At that hearing, Mr. Cuetara should be afforded the opportunity to testify, present evidence, subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing. 18 U.S.C. § 4247(d). If this court concludes by a preponderance of the evidence that Mr. Cuetara is "incompetent" to stand trial, "the court must order the [him] hospitalized for a reasonable period of time (up to four months) for the purpose of determining whether there is a 'substantial probability' that the defendant will become competent in the foreseeable future." *Id.*[1]

---

[1] Step-two orders are subject to immediate appeal. *See United States v. Boigegrain,* 122 F.3d 1345, 1349 (10th Cir. 1997) ("if the appeal is not allowed there can be no remedy for the resulting loss of liberty.").

The third step follows the custodial period. During this step, the court revisits whether a defendant has become competent to stand trial or, alternatively, is a "long-term incompetent" because he is either a "sexually dangerous person," 18 U.S.C. § 4248(d), or poses a "substantial risk of bodily injury to another person or serious damage to property of another." 18 U.S.C. § 4246(d). If he has not become competent and is not a long-term incompetent, he must be released. *Id.; See also United States v. McKown,* 930 F.3d 721 (5th Cir. 2019).[2] The question at issue relates to the latter part of step two and step three.

### III. What should this court do upon a finding of incompetence?

In an ordinary case, once a defendant is found incompetent, they are committed to the Attorney General (AG) who then transports them to a Bureau of Prisons (BOP) Federal Medical Center (FMC) where they are evaluated and treated for a period of up to four months. After that, the court determines whether or not that defendant has attained the capacity to proceed.[3]

That process is not feasible here for two main reasons: 1. The BOP has FMC placement wait times far exceeding four months and; 2. The unique nature of Mr. Cuetara's defects. These realities create the potential for serious statutory and constitutional violations. In order to avoid those pitfalls the court should, at a minimum, stay the order of commitment until the government demonstrates the availability of a suitable facility. The court plainly has the statutory authority to exercise this option and the government has indicated a willingness to allow Mr. Cuetara to self-surrender for hospitalization.

---

[2] There is no evidence, let alone clear and convincing evidence, that Mr. Cuetara is either a sexually dangerous person or a substantial risk of bodily injury to another or serious damage to property of another. While not dispositive, the nature of the charges does not support such a finding, he has no prior criminal history, and he has been out of custody without incident since March 2021.

[3] Court's variously call this "restored" or "competent."

This court may also, after a finding of incompetence, immediately hold a hearing to establish the "reasonable period of time" necessary to determine whether Mr. Cuetara will attain capacity. Finally, this court may find the statutory scheme of 18 U.S.C. § 4241(d) is simply unconstitutional as applied to Mr. Cuetara.

In order to evaluate each option, this court should first consider the present realities of restoration and the unique nature of Mr. Cuetara's defects.

### IV. Due to lack of resources, the Bureau of Prisons is not equipped to timely treat incompetent inmates.

Ample recent evidence demonstrates that the AG lacks the resources and therefore ability to treat incompetent defendants. On November 10, 2022, United States District Court Judge Ted Stewart dismissed the indictment against defendant Sita Leusogi after the Attorney General failed to transport Mr. Leusogi for competency restoration within the statutory period. *United States v. Leusogi,* 2022 WL 16855426 (D. Utah, Nov. 10, 2022). Mr. Leusogi was ordered to the custody of the AG on June 1, 2022. On September 29, 2022, Mr. Leusogi moved to dismiss the indictment because he remained in county jail with no indication of being transported for restoration. On October 19, 2022, rather than dismiss the indictment, Judge Stewart ordered the AG to "place Defendant in a suitable facility within seven days of this Order." Seven days came and went. On October 27, 2022, Dr. Dia Boutwell, the Chief of Psychological Evaluations for the BOP, represented to the court that there are only three "suitable facilities" and the wait times for each were "significant." Dr. Boutwell estimated that Mr. Leusogi would be admitted in February 2023 – 8 months after he was ordered committed. Thereafter, Judge Stewart dismissed the case finding "this substantial delay results in actual prejudice to Defendant's statutory and constitutional rights, which works a substantive disadvantage to the Defendant. This is particularly true where, as here, there is no indication that restoration proceedings are likely to result in restored competency for the Defendant." *Id.*

Those wait time have not improved in the last nine months. In March 2023, then-United States Magistrate Judge Gordon Gallagher encouraged the government to place defendant Christian Castrellon (deemed incompetent on July 15, 2022) in a suitable facility on or before April 10, 2023. That date came and went, and Mr. Castrellon was not placed at FMC Butner until April 18, 2023. On May 12, 2023, now District Court Judge Gallagher dismissed the indictment against Mr. Castrellon. 22-cr-00112-GPG, Doc. 68. In that opinion, Judge Gallagher cited a similar pending matter in the District of New Mexico where the AG failed to even begin restoration efforts within four month statutory period and District Court Judge Matthew Garcia admonished, "if the Government wants to continue to file charges against severely mentally ill individuals for ... alleged conduct that may be related to symptoms of their mental health, then the Government needs to figure out how to allocate those resources [to competency restoration facilities]." *United States v. Lara*, 2023 WL 3168646, at *7 (D.N.M. Apr. 28, 2023).[4]

### V. Mr. Cuetara's specific defects make him particularly vulnerable to statutory and constitutional violations.

Mr. Cuetara's time spent waiting for the inevitability of the AG's failure to hospitalize him in a suitable facility will be particularly cruel. This court is familiar with Mr. Cuetara's defects including deafness, the inability to speak, and language deprivation. Mr. Cuetara intends to admit as Exhibits to the competency hearing reports from Margarita Perez, Dr. Megan Hoben, and Dr. Lawrence Pick in addition to the evaluation and report from Dr. Pollard.[5] At the hearing, counsel intends to illicit

---

[4] Courts that have upheld the constitutionality 18 U.S.C. § 4142(d) have done so in reliance on the belief that defendants were actually receiving treatment during the statutory period of "hospitalization." *See e.g. United States v. Strong,* 493 F.3d 1055, 1062 (9th Cir. 2007) (the "overarching purpose" of commitment is "to enable medical professionals to accurately determine whether a criminal defendant is restorable to mental competency.").

[5] Those reports were previously submitted to this Court at Doc. 75-4, 75-5, and transmitted to chambers via e-mail pursuant to this court's Order, Doc. 105, on February 15, 2023.

testimony from Dr. Pollard concerning the precise nature of those defects.

For the ordinary deaf inmate, detention is accompanied by fear, isolation, and heightened levels of abuse at the hands of inmates and staff.[6] A 2014 Al Jazeera documentary highlighted the plight one deaf inmate, Felix Garcia, and his struggles while incarcerated.[7] The documentary is informative about the conditions to which Mr. Garcia and other deaf individuals are subjected while incarcerated (including rape and abuse rates over 80%).[8] But Mr. Cuetara would be in a worse position than a deaf person with Mr. Garcia's abilities. Mr. Garcia is fluent in ASL and English and is verbal. Mr. Cuetara is functionally illiterate in all languages, cannot lip read, is entirely non-verbal, and suffers from language deprivation setting him apart from an ordinary deaf inmate raised in the United States with access to deaf education.

BOP facilities may be worse than those state facilities highlighted in the documentary. Jim Ridgeway, a New York Times journalist with a particular focus on the treatment of prisoners, spoke to conditions in federal facilities concluding they did not have "any" programs in place to "deal with the deaf."[9] As recently as January 2021, much the same appeared to be true. FCI Butner Inmate Thomas Heyer sued the BOP alleging, among other things, that their failure to provide him with

---

[6] McCay, Vernon, *The horror of being deaf in prison,* Am Ann Deaf. 2010 Summer;155(3):311-21 ("Being Deaf and in prison is a horror. The main fear of prison inmates, whether Deaf or hearing, is that they will be raped, killed, or subjected to other forms of violence. Such fears are based in reality.").

[7] Al Jazeera, *Deaf in Prison,* https://www.youtube.com/watch?v=AstF5kMaH_w (2014); *See also* The Marshall Project, *The Isolation of Being Deaf in Prison,* https://www.themarshallproject.org/2018/10/18/the-isolation-of-being-deaf-in-prison (Oct. 18, 2018).

[8] *See also,* Miller, Katrina, *Obstacles faced by deaf people in the criminal justice system,* Am. Annals of the Death (June 2005) ("The two most serious problems deaf inmates face are physical danger and isolation. Deaf prisoners are vulnerable to rape and other forms of assault because they cannot hear what transpires around them and identify potentially dangerous interactions. Language barriers make it more difficult for them to make friends and form alliances for mutual protection.").

[9] NYT, *James Ridgeway, Hard-Hitting Investigative Journalist, Dies at 84,* https://www.nytimes.com/2021/02/14/obituaries/james-ridgewaypri-dead.html (Feb. 14, 2021).

point-to-point video calls with deaf individuals outside of prison violated his First Amendment rights. *See United States v. Heyer,* 984 F.3d 347 (4th Cir. 2021).[10] Mr. Heyer had fought for his right to communicate with other deaf individuals for over ten years. In January 2021, the Fourth Circuit found in his favor and ordered the BOP to accommodate access to point-to-point video calls. *Id.* at 366. The *Heyer* opinion, and the decade of preceding litigation, make clear that the BOP (and FMC Butner, one of the three restoration facilities) is not suitable for deaf inmates. This court should consider Mr. Cuetara's unique characteristics, and the impact of custody on him, when evaluating the issues raised by this brief.

### VI. The language of 18 U.S.C. § 4241(d) does not mandate inpatient confinement in the BOP for competency restoration.

By default, the AG transfers custody of incompetent inmates to one of three BOP FMCs for inpatient treatment. However, nothing in the statute mandates such confinement and it would be particularly inappropriate here.

#### a. Relevant Statutory Language.

18 U.S.C. § 4241(d) provides:

If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility –

(1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to for forward; and

---

[10] Mr. Heyer is subject to civil commitment after having been deemed a sexually dangerous person. In addition to federal charges related to child pornography, Mr. Heyer was previously convicted of terrorist threats and kidnapping in an incident that involved the sexual assault of a ten-year-old boy. Mr. Heyer has also admitted to molesting more than forty children.

7

>    (2) for an additional reasonable period of time until –
>        (A) his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the trial to proceed; or
>        (B) the pending charges against him are disposed of according to law; whichever is earlier.

"Suitable facility" means "a facility that is suitable to provide care or treatment given the nature of the offense and the characteristics of the defendant." § 4247(a)(2). The Attorney General "may contract with a State, a political subdivision, a locality, or a private agency for the confinement, hospitalization, care, or treatment of, or the provision of services to, a person committed to his custody," and "shall, before placing a person in a facility pursuant to the provisions of section 4241 . . . consider the suitability of the facility's rehabilitation programs in meeting the needs of the person." § 4247(i)(A) & (C).

"Hospitalization" is defined broadly in other sections of the United States Code. For example, in the Medicare context, (42 U.S.C. § 1395, et. seq.), hospitalization includes both "inpatient hospital services" (§ 1395x(b)) and "partial hospitalization services." § 1395x(ff). Partial hospitalization services encompass services consistent with outpatient, community-based competency restoration, including "individual and group therapy with physicians or psychologists . . . services of social workers, trained psychiatric nurses, and other staff trained to work with psychiatric patients . . . (and) patient training and education." [cite] "Hospital services" includes services "rendered to outpatients and partial hospitalization services incident to such services." § 1395x(s)(2)(B).

Likewise, "custody" is broadly defined and can include release in the community under supervision. For example, a person is in "custody" for the purpose of 28 U.S.C. § 2255 while on supervised release. *United States v. Reves*, 774 F.3d 562, 565 (9th Cir. 2014) (citing *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989)). *See also* 28 C.F.R. § 551.105; Bureau of Prisons (BOP) Program Statement P5100.08, Chapter 1, p. 2 (9/12/2006) (providing that custody levels include "community," "out,"

and "in.").[11]

### b. Automatic commitment to the BOP is inconsistent with § 4241.

If, after the July 27th hearing, this court finds Mr. Cuetara is incompetent, the court is directed to "commit the [him] to the custody of the Attorney General." 18 U.S.C. § 4142(d). This commitment need not be to a BOP facility. *See e.g. United States v. Dalasta,* 856 F.3d 549, 555 (8th Cir. 2017) (the AG has statutory discretion to "choose a 'suitable facility' if circumstances in an unusual case warranted, for example, hospitalization in a local facility accessible to BOP medical experts and less harmful to the defendant."). *Id.* at 556. Here, it cannot be a BOP facility because no FMC would be a suitable facility and AG's discretion is limited by the mandate that the facility *must* be suitable.

The mandate that the facility be "suitable" is first stated in 18 U.S.C. § 4241(d). To the extent there is doubt that "shall" modifies "suitable facility" (not just "hospitalize"), 18 U.S.C. § 4247 provides clarity. First, § 4247(a)(2) defines suitable facility to mean "a facility that is suitable to provide care or treatment given the nature of the offense and the characteristics of the defendant." Then, 18 U.S.C. §4247(i)(A) makes clear that identifying and contracting with a such a facility is mandatory: "the Attorney General[…] shall[…]before placing a person in a facility pursuant to the provision of section 4241…consider the suitability of the facility's rehabilitation programs in meeting the needs of the person."[12] Taken together, § 4247 requires the Attorney General, before placing a defendant in a facility, to ensure that facility can provide for his treatment and care given his needs and characteristics.

Despite relevant statutory language allowing for community-based competency restoration and mandating that the facility of hospitalization be suitable, it is the policy of the AG and BOP to

---

[11] BOP program statements are available at https://www.bop.gov/PublicInfo/execute/policysearch?todo=query.

[12] Here, that means that, at a minimum, the facility that employs (or has the ability to contract) a CDI and ASL interpreter team.

9

commit every defendant found incompetent to stand trial under 8 U.S.C. § 4241(d) to an FMC. Defendants are placed at FMCs regardless of whether inpatient confinement is necessary to achieve the government's interests or is a suitable treatment protocol for the particular defendant.[13] In 28 C.F.R. § 0.96(j) the AG explicitly delegated to BOP the duties imposed upon the Attorney General relating to the commitment and treatment of persons under § 4241(d).

BOP policy statements likewise make clear that, despite their statutory mandate, the AG considers the BOP a "suitable facility" in nearly all circumstances. Under BOP policy, "those inmates requiring hospitalization by statute (§4241(d), §4243(e), §4245, §4246(e))…will be designated to a Medical Referral Center." BOP Program Statement P5070.12, pp. 6-7 (4/16/2008). Thus, although even BOP seems to recognize that inpatient incarceration for competency restoration requires a using a facility suitable to provide care or treatment given the nature of the offense and the characteristics of the defendant, current AG and BOP policy mandate incarceration in an FMC.

### c. This court should stay commitment pending a showing of "suitable facility."

This court can, and should, take steps necessary to ensure the AG is fulfilling their statutory duties. Automatic immediate confinement for competency restoration—without an individualized determination of the suitability or necessity of custodial inpatient treatment— also raises serious constitutional concerns. To ensure the AG complies with the statute and address constitutional concerns, this court should, upon a finding of incompetence:

1. Delay or stay Mr. Cuetara's Order of commitment (not on July 27, 2023)[14];
2. Order the government show present ability to comply with 18 U.S.C. §§ 4241(d) and

---

[13] The government, through Assistant United States Attorney Alecia Riewerts, has indicated their intention to do the same in this case.

[14] In the alternative, this court could take under consideration the finding of incompetence until the government demonstrates the Attorney General's ability to comply with § 4247(i)(C). Neither procedural process is inconsistent with the statute.

4247(i)(C); and

3. Only upon the showing of a suitable facility, Order that Mr. Cuetara be committed to "custody of the Attorney General" (not the Bureau of Prisons).

The first is permissible under § 4241(d) as, unlike elsewhere in the statute, the court's mandate to commit does not contain a temporal component. Nothing in the statute requires commitment to take place contemporaneously with a finding of incompetence (or within any specific time frame), only that it occur "after" the hearing and a finding of incompetence. More than that, it is incumbent on the court to ensure the latter two statutory mandates are fulfilled. Therefore, only after the government demonstrates their ability to comply with the requirements of 18 U.S.C. § 4247(i)(C) should this court order Mr. Cuetara's commitment to the custody of the Attorney General.

Mr. Cuetara is not asking this court to order a particular treatment facility, or otherwise circumvent the statute, but rather to safeguard statutory and constitutional concerns.[15] The mandate to commit the defendant to the custody of the Attorney General does not divest this court of their duty to ensure the government complies with their statutory obligations and to safeguard Mr. Cuetara's constitutional rights. The law has "long recognized that the 'authorization of an act also authorizes a necessary predicate act.'" *Luis v. United States*, 578 U.S. 5, 26 (2016) (Thomas, J., concurring). Here, this court is authorized to ensure the AG *can* place Mr. Cuetara in a suitable facility. Similarly, in the competency-restoration context, the district court must make the preconfinement determination regarding the suitability of the AG's proposed treatment plan. *Cf. Sell v. United States*, 539 U.S. 166, 180-81 (2003). It is the judiciary's—not an agency's—province to interpret criminal statutes, and to

---

[15] The Tenth Circuit has not addressed either the timing of the commitment nor a court's role in determining the suitability of a facility. The Ninth Circuit found that the court has "no role" in determining a "suitable facility," but did not address either the timing of the court's order or the procedure proposed herein. *United States v. Quintero*, 995 F.3d 1044, 1050 (9th Cir. 2021).

interpret statutes to avoid constitutional concerns. *See Solid Waste Agency v. Corps of Engineers*, 531 U.S. 159, 173-74 (2001). Therefore, this court is both authorized and required to demand the government demonstrate their ability to provide a suitable facility. That showing is particularly important in this case given the BOP's long wait times and Mr. Cuetara's unique characteristics and defect.

Even in if this court believes that it is within the AG's discretion to select a suitable facility without demonstrating as much to the court, the court should stay this order until the AG confirms that the treatment facility of their choice (likely an FMC) is available. Thereafter, Mr. Cuetara can self-surrender to their chosen facility rather than spend the four-month period in a local facility awaiting the availability of space at an FMC. Suitability and availability are discrete questions and this court can stay the order of confinement pending a showing of both.

### VII. After a finding of incompetence, this court should make a finding on the "reasonable period of time" necessary to determine whether Mr. Cuetara will attain capacity.

In addition to staying an order of commitment pending the government's showing of an available and suitable facility, this court should hold a hearing to determine the "reasonable period of time" for hospitalization in that facility. The directive to commit Mr. Cuetara to the AG for the purpose of hospitalization may be mandatory, but it is not without limitation. Hospitalization is only allowed "for such a reasonable period of time, not to exceed four months, *as is necessary* to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." 18 U.S.C. § 4241(d)(1) (emphasis added). Therefore, in no event can that period of time exceed four months. But four months is not a given, because that time cannot be longer than "necessary." The phrase "as is necessary" modifies "reasonable period of time." *See United States v. Quintero,* 995 F.3d 1044, 1051 (9th Cir. 2021) ("it is a temporal limitation…"). The history of the Insanity Defense Reform Act of 1984 supports this conclusion. Congress enacted § 4241(d) in response to *Jackson v. Indiana* and "the temporal limitation remedied [the defect that

authorized indefinite commitment for mentally incompetent defendants]." *Id.* Therefore, without enforcing the temporal limits in § 4241, the constitutional concerns raised in *Jackson* are activated. *See infra* at VII.

For those reasons, before ordering Mr. Cuetara's commitment (or immediately after his commitment but before hospitalization), this court should hold a hearing to determine the time necessary to make that determination.[16] Dr. Pollard's testimony will be highly relevant to this determination and counsel anticipates eliciting his opinion on what constitutes a reasonable period given Mr. Cuetara's specific defects. This process does not undercut the mandatory nature of Mr. Cuetara's commitment – it merely ensures that Mr. Cuetara is not committed for longer than is necessary.[17] The proposed process would abide all aspects of the statute while also avoiding unconstitutional pitfalls inherent in the AG's current implementation of that statute and the statute as applied to Mr. Cuetara.

> **VII. If this court does not stay Mr. Cuetara's commitment pending a suitable facility and does not limit his commitment to a "reasonable period," the mandatory detention scheme in 18 U.S.C. § 4241(d) violates Mr. Cuetara's constitutional rights.**

Without ensuring that the purpose of Mr. Cuetara's detention is fulfilled and enforcing temporal limitations, the mandatory detention scheme outlined in § 4241 is unconstitutional as applied to Mr. Cuetara. In *Jackson* the Supreme Court addressed the due process requirements for pretrial

---

[16] Contemplated by the statute is a circumstance in which the "reasonable period of time," is nominal, in which case Mr. Cuetara would be eligible for immediate release.

[17] There is no Tenth Circuit precedent addressing the proposed process. In *United States v. Anderson,* 679 Fed.Appx. 711 (10th Cir.2017)(unpublished), Ms. Anderson asked the district court to hold a hearing about "whether her condition was amenable to treatment and whether, with treatment, there was a substantial probability that she could attain capacity in the foreseeable future." The court rejected this request, but that is not the process Mr. Cuetara proposes. He is asking this court to hold a hearing about the "reasonable period of time…necessary" to determine his probability of attaining capacity.

confinement for competency restoration. 406 U.S. 715, 738 (1972).[18] 18 U.S.C. § 4241 was implemented to conform with *Jackson's* holding.[19] In an unpublished opinion, the Tenth Circuit held that *Jackson* provides § 4241 with the requisite cover for due process challenges because it is "is permissible to hold a defendant for a 'reasonable period of time' to examine whether there is a 'substantial probability' that he or she will attain capacity, so long as the procedure has a 'reasonable relation' to the purpose of the commitment." *United States v. Anderson,* 679 Fed.Appx. 711, 713 (10th Cir. 2017). That is only true if Mr. Cuetara is hospitalized in a suitable facility and his commitment is limited to the time necessary to determine whether he can become competent. Without those safeguards, 18 U.S.C. § 4241 violates Mr. Cuetara's due process rights.

**VIII. Conclusion**

Upon a finding of incompetence this court should:

**1.** Stay the order of commitment until the government demonstrates both the suitability and the availability of a facility for hospitalization. Thereafter, Mr. Cuetara should be ordered to self-surrender to the custody of the AG.

**2.** Hold a hearing to determine the "reasonable period of time" necessary to determine whether Mr. Cuetara will attain capacity.

---

[18] Mr. Jackson, who suffered defects similar to those of Mr. Cuetara, alleged that commitment for the purpose of attaining "sane" status "deprived [him] of his Fourteenth Amendment rights to due process and equal protection, and constituted cruel and unusual punishment under the Eighth Amendment..." *Jackson v. Indiana,* 406 U.S. 715 (1972)("Jackson is a mentally defective deaf mute with a mental level of a pre-school child. He cannot read, write, or otherwise communicate except through limited sign language").

[19] A person hospitalized for competency restoration "cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future" and that "continued commitment must be justified by progress toward" the goal of competency restoration. *Id.* at 738.

**3.** In the absence of the forgoing, find the statutory scheme of 18 U.S.C. § 4241(d) is unconstitutional as applied to Mr. Cuetara

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender


s/Laura H. Suelau
LAURA H. SUELAU
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
Laura.suelau@fd.org
Attorney for Defendant

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 20, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

    Alecia Riewerts, AUSA
    Email: alecia.riewerts@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

    Andres Cuetara (via Mail)

                                                                s/Laura Suelau
                                                                LAURA SUELAU
                                                                Assistant Federal Public Defender
                                                                633 17th Street, Suite 1000
                                                                Denver, CO  80202
                                                                Telephone:  (303) 294-7002
                                                                FAX:  (303) 294-1192
                                                                Laura.suelau@fd.org
                                                                Attorney for Defendant