```
 1                   IN THE UNITED STATES DISTRICT COURT

 2                     FOR THE DISTRICT OF COLORADO

 3   Criminal Action No. 21-cr-13-RM

 4    UNITED STATES OF AMERICA,

 5          Plaintiff,

 6          vs.

 7    ANDRES CUETARA,

 8          Defendant.

 9   ----------------------------------------------------------------

10                       REPORTER'S TRANSCRIPT

11                       Competency Hearing

12   ----------------------------------------------------------------

13          Proceedings before the HONORABLE RAYMOND P. MOORE,
     Judge, United States District Court for the District of
14   Colorado, commencing on the 7th day of August, 2023, in
     Courtroom A601, United States Courthouse, Denver, Colorado.
15

16                           APPEARANCES
     For the Plaintiff:
17   ALECIA L. RIEWERTS, United States Attorney's Office, 1801
     California Street, Suite 1600, Denver, CO 80202
18

19
     For the Defendant:
20   LAURA H. SUELAU, Federal Public Defender's Office, 633 17th
     Street, Suite 1000, Denver, CO 80202
21

22

23

24
     Reported by KEVIN P. CARLIN, RMR, CRR, 901 19th Street, Room
25   A259, Denver, CO 80294, (303)335-2358
```

21-cr-13-RM    Competency Hearing    08-07-2023

1                    P R O C E E D I N G S

2          (Proceedings commenced at 1:58 p.m.)

3              THE COURT:  21-cr-13, United States versus Andres

4   Cuetara.  I'll take appearances, starting with the Government.

5              MS. RIEWERTS:  Alecia Riewerts on behalf of the

6   Government.  Good afternoon, Your Honor.

7              THE COURT:  Good afternoon to you.

8              MS. SUELAU:  Good afternoon.  Laura Suelau on behalf

9   of Mr. Cuetara.  And Mr. Cuetara's presence is waived, so he's

10  not here.

11             THE COURT:  Good afternoon to you as well.  So, let me

12  do a couple things here.  First, let me give a little

13  background.  Basically, on July 20 -- we'll get to that.

14             MS. RIEWERTS:  Perfect.  Thank you.

15             THE COURT:  Basically, on July 27, I held a hearing

16  pursuant to 18 USC 4241(a), a competency hearing for which a

17  motion had been filed previously.  That took a good portion of

18  the day, and during the course of that hearing, a witness

19  testified, Dr. Pollard, and he is the only witness who

20  testified.  Each side was given the opportunity to present

21  additional evidence.  Neither elected to do so.

22             The unrebutted testimony was that Mr. Cuetara was

23  incompetent within the meaning of 4241.  I will say that that is

24  consistent with my observations.  Although I don't profess to

25  have, you know, some insane ability to look at somebody and

Kevin P. Carlin, RMR, CRR

21-cr-13-RM     Competency Hearing     08-07-2023

1   decide on the basis of my staring into their soul determine

2   whether they're competent or incompetent, but as I explained, I

3   did spend a considerable time looking at him, because I have to

4   make some decisions, and I make decisions as to credibility of

5   witnesses who testify, to sincerity of persons who appear before

6   me in changes of pleas and sentencings.  There's just an

7   observational component that's part of this job, and my

8   observations, limited as they were, were somewhat consistent

9   with that.

10        And then finally the Government agreed during the

11  course of argument.  We had limited argument, and then I

12  continued the matter until today because I wanted an opportunity

13  for more argument.  I wanted to focus somewhat on the issue of

14  what happens next, if in fact I find him to be incompetent.  And

15  frankly, I forecasted that my preliminary indication was that I

16  was leaning towards finding him to be incompetent.

17        At this point, while there are some things to discuss,

18  my understanding is that developments have occurred.  Let's call

19  it that.  And we will get to that in a moment.  I don't

20  profess -- well, let me do this.  I don't need any other

21  argument on the issue of whether or not Mr. Cuetara is

22  incompetent.  I will say that subject to reopening of the

23  evidence, and subject to potential future proceedings, I find by

24  a preponderance of the evidence presented to me back on the

25  July 27 hearing that Mr. Cuetara is presently suffering from a

4

21-cr-13-RM      Competency Hearing      08-07-2023

1   mental disease or defect rendering him mentally incompetent to

2   the extent that he is unable to understand the nature and

3   consequences of the proceedings against him or to assist

4   properly in his defense.

5          Now, I make that finding subject to these various

6   qualifications that I put on there, for a couple reasons.

7   Number one, as I said, there really is no more point to arguing

8   about what the evidence showed at that hearing, and so I don't

9   need any further argument on that.  I will momentarily take some

10  additional argument on the issue of what next, but let me just

11  be clear.  One of the things that I was trying to do is to

12  decide what my options were in terms of not just saying things

13  from the bench, but having a practical mechanism for bringing

14  about the outcome that I would likely put into effect.

15         That outcome was likely -- subject to hearing from the

16  parties, and I still will hear from the parties, for reasons I

17  will also explain later, I was likely to commit him to the

18  custody of the attorney general, and I was likely to entertain

19  the notion of voluntary surrender.

20         Now, how do we get that done is an interesting issue,

21  because he's not in marshals' custody.  And how do I make sure

22  that the right people at the BOP get the information, et cetera,

23  et cetera.  That led to me making some calls this morning, and

24  primarily, I spoke with Kyla Hamilton, the number two probation

25  officer in our probation office, and was basically talking to

Kevin P. Carlin, RMR, CRR

21-cr-13-RM     Competency Hearing     08-07-2023

1   her about that because, of course, probation always communicates

2   with the designation facility after sentencing.  They're the

3   ones that send the PSR and all the rest of it along.  And so I

4   at least assume that that was a good place to start.  She in

5   turn spoke to marshals people, and they all got back to me, and

6   I got my questions resolved.

7            I also heard that there is something that Ms. Riewerts

8   wants to tell me, or that I could expect that she would want to

9   tell me.  So, Ms. Riewerts, unless my -- unless I'm just getting

10  information that's just bad, do you intend to tell me something

11  about the whereabouts of Mr. Cuetara?

12           MS. RIEWERTS:  Yes, Your Honor.  I intend to tell you

13  information that the FBI received about the whereabouts of

14  Mr. Cuetara that has not yet been confirmed.  Would you like me

15  to speak from here or from the podium?

16           THE COURT:  Either.  Your choice.  Why don't we do it

17  from the podium.  I didn't wear my hearing aids.  And let me

18  just ask before you tell me what I already know whether or not

19  you told defense counsel.

20           MS. RIEWERTS:  I did, Your Honor.

21           THE COURT:  Okay.

22           MS. RIEWERTS:  I conveyed the information that I had

23  at that time, which was approximately between 12:00 and 12:15

24  this afternoon.  And that information has not changed since that

25  point in time.  Your Honor, the FBI received information

Kevin P. Carlin, RMR, CRR

21-cr-13-RM   Competency Hearing   08-07-2023

1   yesterday evening just before 6:30 p.m. from Ken Stock, who is

2   Mr. Cuetara's landlord and also one of his roommates, in regards

3   to Mr. Cuetara.  The -- Mr. Stock is also one of Mr. Cuetara's

4   third-party custodians.

5           THE COURT:  Maybe he is; maybe he isn't.  If you

6   actually look at the order of release that's a bit of a mess, it

7   has his name written there.  It has supposedly his signature as

8   authorized over VTC, because this was in the COVID era, but then

9   the box is not checked next to it.  So, it's a little messy, but

10  regardless, I know who Mr. Stock is.

11          MS. RIEWERTS:  Mr. Stock, and it's unclear whether he

12  was calling an FBI local general number or whether he was

13  calling some sort of hotline number, because it was forwarded to

14  the case agent from an operations center email address.

15  However, Mr. Stock conveyed that he received a text from

16  Mr. Cuetara's mother stating that she and Andres are back in

17  Mexico, and she wanted to make us aware.  That information,

18  Special Agent Adam Krob from the FBI, who was the case agent,

19  reached out to Mr. Stock to try to find out further details.  He

20  had not received a call back by the time I came to court this

21  afternoon, Your Honor.

22          I reached out to the deportation officer, who is

23  Mr. Cuetara's point of contact with regard to his deportation

24  proceeding, to see if he had perhaps been deported consistent

25  with the deportation order that was issued.  Deportation Officer

21-cr-13-RM    Competency Hearing    08-07-2023

1   Ilarraza conveyed that he was not aware of any deportation, and

2   that the last time they had confirmation that Mr. Cuetara was

3   physically present at his address near Denver was on Thursday,

4   August 3rd.

5       I don't have the time of that confirmation, but he's

6   required every week to send a photograph, which conveys a GPS

7   location, and that particular confirmation on August 3rd

8   conveyed that he was in fact at his residence here in Denver

9   where he has lived since he was released on supervised release.

10      With regard to the pretrial services officer, I then

11  reached out to the pretrial services officer to convey this

12  information.

13          THE COURT:  And I'm assuming that's how it worked its

14  way over from pretrial over to Ms. Hamilton over to me, and it's

15  just coincidence that I was getting her involved in looking at

16  the file at the same time that information was coming in to the

17  file.

18          MS. RIEWERTS:  It seems that way, Your Honor.  And so

19  therefore --

20          THE COURT:  It doesn't seem.  I mean, it wasn't some

21  great master plan of mine.  It's just that's the way it worked

22  out.  Let me ask you one thing, though, and I will let you get

23  back to your advising the pretrial services officer.  You

24  indicated that you got a GPS confirmation of his presence in the

25  area on Thursday?

21-cr-13-RM     Competency Hearing     08-07-2023

1   MS. RIEWERTS:  Yes.  Thursday, August 3rd, Your Honor.

2   THE COURT:  I'm not -- I grabbed his bond really

3   quickly before I came out here.  Does he have GPS monitoring

4   with us or with immigration or both?

5   MS. RIEWERTS:  He does not have GPS monitoring with

6   the criminal case, Your Honor.  He does have monitoring based on

7   his deportation proceedings.

8   THE COURT:  Okay.

9   MS. RIEWERTS:  He is, as per the deportation officer,

10  Eric Ilarraza, enrolled in what he called ATD, or alternative to

11  detention.  He -- defendants who are on ATD either use an ankle

12  monitor or they use a phone to check in.  And when Deportation

13  Officer Ilarraza checked the records, Mr. Cuetara does the phone

14  check-in, and so that was last done on August 3rd.  He's

15  required to do it on a weekly basis, but not at any specific

16  time during the week.

17  THE COURT:  Okay.  All right.  It is what it is.

18  MS. RIEWERTS:  And then with regard to, I had a

19  conversation with pretrial services Officer Jake Smith, and

20  conveyed the information to him.  He of course discussed it with

21  Supervisory Probation Officer Kyla Hamilton.  They called me

22  back later.  I didn't have any information to convey at that

23  point in time.  They did mention that they were going to try to

24  do a home visit this afternoon, but I have not heard on whether

25  or not that had occurred.  And as I noted, that information was

21-cr-13-RM     Competency Hearing     08-07-2023

1   conveyed to Ms. Suelau earlier this afternoon.

2         THE COURT:  All right.  I'm not sure that there's

3   anything I'm looking for you to say.  I'm not sure that you're

4   prepared to say anything, and I'm not looking for you to say

5   anything, but I will give you the opportunity to say anything

6   with respect to this if you wish to do so.

7         MS. SUELAU:  Your Honor, I don't have anything to add.

8         THE COURT:  That's fine.

9         MS. SUELAU:  Just a few points of clarification for

10  the record, in that Mr. Cuetara's point of contact is not the

11  officer referenced by Ms. Riewerts.  Mr. Cuetara, my

12  understanding, is supervised by a third-party agency, not DHS or

13  ICE.  And his -- his point of contact with that agency is a

14  woman by the name of Vanessa Garcia.  So, I just don't know who

15  the other gentleman is, and my only contact is Vanessa Garcia.

16        THE COURT:  All right.  So, let's just kind of let me

17  talk a little bit.  I do intend to go forward with what I wanted

18  to have argued this afternoon.  I also intend to have a -- to

19  set, and I do now set a status conference for Wednesday at

20  2 o'clock.  Nobody needs to prepare for the status conference on

21  Wednesday at 2 o'clock.  The defendant's presence is required.

22  I don't intend to even have the interpreters here, because what

23  I intend to do is sit here, and he will either walk through the

24  door or he won't.

25        If he walks through the door, then what I'm going to

21-cr-13-RM     Competency Hearing     08-07-2023

1   talk about for the rest of the afternoon will be put into

2   effect.  If he does not walk through the door, I'm going to have

3   a bench warrant issued.

4         And if a bench warrant is issued and he is eventually

5   picked up, then we will reconvene, because I will not enter this

6   order in his absence.  Instead, we will reconvene, and there may

7   be different things that go on.

8         For example, there could be a request from the

9   Government to reopen the presentation of evidence.  There could

10  be the possibility that whatever information I had is stale,

11  because I don't know when he gets picked up or if he gets picked

12  up.  And it could be that as people dig into this, more and more

13  things occur.

14        Let me be clear.  Everyone exhale.  What I mean by that

15  is this:  There's any number -- I'm not saying any of these --

16  well, I have covered the list of things that could be true.  But

17  obviously, if he's not here, the question becomes, well, on what

18  basis was the decision made?  It could be that there's some

19  indicia that he understands better than I thought he did.  In

20  other words, that he knows, that he was able to follow that one

21  of the consequences of this hearing could be his commitment.

22  And if that's the case, well, then obviously more discussion

23  need be had.

24        It could be -- and this is the exhale, Ms. Suelau.  I

25  am just checking boxes.  It could be his lawyer told him to go.

21-cr-13-RM     Competency Hearing     08-07-2023

1  It could be his mom told him to go.  She was here being assisted

2  by an interpreter.  It could be one of the interpreters told him

3  to go.  And the only reason I even suggest that is that our

4  Spanish interpreters tend to be very much understanding of their

5  role.  What I mean by that is words come out my mouth or someone

6  else's mouth, and those same words come out of their mouth.

7  They don't get involved beyond that on a personal level.  They

8  don't try and understand the person or assess whether the person

9  is doing well or taking information well.  They're simply there

10  as a conduit for communication.  I have found it to be the case

11  that other languages are not always that unattached.

12       Could be his roommates told him.  There are two, I

13  believe.  Mr. Stark -- Stock is one.  I'm told he's the

14  landlord.  The other is Mr. Wilson.  And, again, I'm just saying

15  possibilities.  It could be Dr. Pollard told him.  It could be

16  immigration told him.  It could be something else.

17       Certainly, there's a more likely scenario among all of

18  these, and that being the mom, since she was here.  She was

19  assisted by an interpreter.  But I don't know.  And I'm not

20  going to make a decision without adequate information before me.

21  But all that I'm saying is that all of these possibilities lead

22  to different outcomes.  It could be that he's in Mexico because

23  his mom took his hand and put him on a bus.  I don't know.

24       But the way we're going to resolve this is we're going

25  to talk about what it is that I intended to do, subject to the

Kevin P. Carlin, RMR, CRR

21-cr-13-RM    Competency Hearing    08-07-2023

1  qualifications I said before.  Then on Wednesday, he will either

2  walk through this door, in which event I will issue a written

3  order consistent with what I decide today, or he won't.  And if

4  he doesn't, then I intend to issue no order, and simply issue a

5  bench warrant.

6       And if I issue a bench warrant, what I am telling the

7  Government is at some point he may be picked up and brought back

8  before this Court.  If he is brought back before this Court

9  before a magistrate judge, that magistrate judge may or may not

10  decide to order him released.  What I am telling you is ask for

11  a stay or do an appeal.  I want to know right away, and the

12  reason is if anyone is going to let him out, it's going to be

13  me, not anyone else, because it will be my order that has been

14  violated.  And I will deal with it, because the process of

15  dealing with it will also implicate this other 4241 issue.

16       So, if he's brought before a magistrate judge, frankly,

17  the best thing to do is to say, can we just bring this matter

18  upstairs?  Because it's going to come up here with or without

19  the magistrate judge's cooperation.  That's what I'm telling

20  you, because I think that that's the best result for this.

21       So, that's where I am.  And as I said, subject to

22  either reopening the evidence or subject -- and subject to

23  whatever presents itself to me on Wednesday at 2 o'clock, I

24  find, as I've indicated, that the evidence as presented to me

25  thus far establishes by a preponderance that he's incompetent.

21-cr-13-RM     Competency Hearing     08-07-2023

1  The questions that we were here to discuss in more detail were,

2  now what? And I will tell you that my understanding is that the

3  defendant had four different layers of response to now what?

4        Layer one, do not commit him to the custody of the

5  attorney general until such time as we have a designation and

6  some -- whether it be a hearing or argument or whatever, I

7  conclude that his, quote/unquote, suitable facility exists.

8        Number two, if I commit him to the attorney general

9  prior to that, I should determine what a, quote, reasonable

10  period is within the meaning of 4241(d)(2), which would be the

11  possibility of an extended period of potential confinement or

12  rehabilitation beyond the four months that's provided for in

13  (d)(1).

14        Third, if I'm unwilling to do either of those, I should

15  declare the statute unconstitutional as applied.

16        And then fourth, what I should do is stay and allow a

17  voluntary surrender.

18        My sense is that the Government's view -- and, again, I

19  recognize that I'm kind of telling everybody what their position

20  is. We will get to let you all talk in a minute. My sense is

21  the Government's position was, look, have a voluntary surrender

22  to the institution. The Government talked to a couple of

23  people, is my memory, and confirmed that the BOP was okay with

24  that.

25        So, what I would tell you is that my inclination,

21-cr-13-RM    Competency Hearing    08-07-2023

1   unless I am convinced otherwise, again, subject to the

2   qualifications that I have said before, is that I would issue a

3   standard order finding him to be incompetent, committing him to

4   the custody of the Bureau of Prisons -- excuse me -- to the

5   custody of the attorney general as provided for in 4241(d).  I

6   would also indicate that the defendant shall remain on bond

7   pending designation, and that he should surrender to the

8   facility designated by the BOP within 15 days of the date of

9   designation.

10          What I would further do is provide a copy of the

11  written order to the United States Marshal Service, more

12  particularly Mary Herndon, and also to Kyla Hamilton at the

13  probation office.  I would instruct that the marshals will send

14  a copy of the order to the BOP designation officials.  I would

15  also order that a transcript of the July 27 hearing as well as a

16  copy of the exhibits, the four -- I think it's four exhibits

17  that were introduced, as well as the photographs which are

18  attached to ECF number 114 -- not attached to.  They're part of.

19  And they were referred to by Dr. Pollard in his testimony.

20          That all of that be put together by the Government and

21  provided to the U.S. Marshals and to Ms. Hamilton, and the order

22  would then specify that they are authorized to release those

23  materials to the BOP for designation purposes and for such other

24  purpose as the Bureau of Prisons may deem appropriate in

25  evaluation and treating Mr. Cuetara.

21-cr-13-RM    Competency Hearing    08-07-2023

1      So, that is what I would do, and intend to do, unless I

2  am convinced of the Government's position -- excuse me -- of

3  defendant's first, second, or third options, and unless

4  Mr. Cuetara does not come through the door on Wednesday at

5  2 o'clock.

6      Let me make it easy, and start with the Government.  In

7  terms of all of these things that I have said, reaction?  No

8  reaction?  Record?  Am I reading you correctly in terms of your

9  position?

10      MS. RIEWERTS:  Yes, Your Honor, with regard to

11  opposing the first, second, and third requests made by the

12  defendant in the most recent briefing.  And then being --

13  basically having spoken with the Bureau of Prisons, I will go

14  into it in further detail, because their suggested language is

15  slightly different than what Your Honor is suggesting.  But in

16  terms of the defendant being found incompetent, I did speak, as

17  Your Honor recollects, with two different Bureau of Prisons

18  officials who work in the different medical facilities that do

19  the restoration processes.

20      And one of the individuals I spoke with was Special

21  Assistant U.S. Attorney for the Bureau of Prisons Genna,

22  G-E-N-N-A, Petre, P-E-T-R-E.  She is at the Federal Medical

23  Center in Butner, North Carolina.

24      In terms of the language that she has suggested, she

25  has sent some sample language and also had signed on to some

21-cr-13-RM     Competency Hearing     08-07-2023

1   language that I had sent to her, but -- and, again, it's only

2   slightly different than Your Honor's language.  It doesn't have

3   a 15-day time period.  Basically, the language that she had

4   suggested or had confirmed was appropriate was the defendant

5   shall surrender to the custody of the attorney general at the

6   designated institution at a date and time set by the attorney

7   general or the Federal Bureau of Prisons, as directed by the

8   Court after designation, or as notified by the U.S. Marshals or

9   by the probation or pretrial services office.

10          And, also, the Government is requesting that, again,

11  depending on what happens on Wednesday, that his pretrial

12  release conditions be continued until he self-surrenders

13  consistent with the commitment order.

14          THE COURT:  Okay.  Go ahead.

15          MS. RIEWERTS:  In order to briefly address some of the

16  concerns that defense counsel raised in her most recent

17  briefing --

18          THE COURT:  Let me pause for a minute and say, look,

19  in terms of the language that's used, again, you weren't privy

20  to it.  I didn't ask you to be privy to my discussions with

21  Ms. Hamilton, and kind of knocking things around, to be blunt

22  about it.  Ultimately, the concern on my end -- and there's no

23  magic to 15 days.  I can make it 30 days, and it may be that

24  that would make a little more sense.  But the concern was that I

25  can't have -- and she spoke to someone in the BOP as well.  The

21-cr-13-RM     Competency Hearing     08-07-2023

1   name I don't know, but you can ask her if you want to.  The

2   concern is that it is very difficult to get a space at these

3   medical facilities right now.  They're backed up.  It's going to

4   take a while.

5        One of the things they can't do is kind of hold open

6   this bed indefinitely and say, well, you know, whenever the

7   judge gets around to it or if he orders it or when he orders it

8   or, you know, we will see what he does, but we're just going to

9   take this bed, put Mr. Cuetara's name on it, and just park it.

10  That's at some point or at some place within the BOP hierarchy

11  going to be met with resistance, and it makes sense that it

12  would.

13       So, to me, what made more sense was including in my

14  order a particular kind of date certain.  And I didn't say this,

15  but would do this, have them notify me at my chambers when and

16  where the designation is.  And then I would post it to the ECF

17  system.  That would provide electronic notice to Government

18  counsel and defense counsel, and he would be required to report

19  within 30 days of the date set forth in that letter.

20       Now, it may be that that's, you know, three weeks left

21  or two weeks left or whatever the heck it is, because it may

22  only be a couple of days.  If they stick something in the mail,

23  God knows how long it takes, but I would rather do that than

24  have something kind of, I don't know, Kumbaya issue about, well,

25  whenever the judge gets around to sending him, we will welcome

21-cr-13-RM     Competency Hearing     08-07-2023

1   him with open arms, because they won't.  It's just not going to

2   work out that way.  So, I appreciate the suggestion, but I kind

3   of lean in favor of the way I wanted to -- the way I want to do

4   it.  Which is hardly a surprise; right?

5           MS. RIEWERTS:  Your Honor, I'm taking the Fifth.  With

6   regard to the language that was submitted that he shall

7   surrender to the custody of the attorney general at the

8   designated institution at a date and time set by the attorney

9   general, and goes on to talk about that that information will be

10  provided to the Court and to the marshals and to the probation

11  or pretrial services officer, it seems to be consistent with the

12  self-surrender orders in sentencing cases where the defendant is

13  not incarcerated at the time of sentencing in order to

14  self-surrender.

15          In terms of --

16          THE COURT:  But that's because when I'm basically

17  throwing -- sending somebody into the BOP's custody following

18  sentencing, they can put him wherever they can.  I mean, it's

19  not -- it's not that they have to have a reservation ready for

20  him.  In all likelihood, Mr. Cuetara would go to a medical

21  center, and I'm just telling you that it's different than me

22  sending somebody following a sentencing.

23          Frankly, I'm not suggesting that they do this, but

24  following a sentencing, you know, they can pick a place to send

25  the individual and then transfer him out or move him around if

21-cr-13-RM     Competency Hearing     08-07-2023

1   things don't work.  So, there's really very little downside to

2   just getting him in the system.

3          I appreciate -- and you're absolutely right.  I'm not

4   disagreeing with you.  The language that was given to me mirrors

5   the kind of language that's used in a post-sentencing scenario.

6   I just don't think this is a really truly good parallel for

7   that.

8          MS. RIEWERTS:  Your Honor, I would note that Your

9   Honor is absolutely correct, that restoration is anticipated to

10  take place at one of a handful of BOP psychiatric referral

11  centers, and that would typically be Federal Medical Center in

12  Butner, North Carolina, or the United States Medical Center for

13  Federal Prisoners in Springfield, Missouri, or a handful of

14  other facilities.

15         I would also note that the option was also given if

16  there were issues with Mr. Cuetara transporting himself, for

17  example he did not have the resources to do that, that I was

18  also told that Mr. Cuetara could self-surrender to the United

19  States Marshal Service here, and they would transport him to the

20  facility.

21         I bring that up only as a point of information.  I have

22  not directly discussed with Ms. Suelau, but throughout these

23  proceedings and Mr. Cuetara's ability to travel to Washington,

24  D.C., et cetera, I anticipated that the preference would be

25  self-surrender at the actual facility.

21-cr-13-RM    Competency Hearing    08-07-2023

1        THE COURT:  No.  Look.  Obviously I don't intend to

2    issue an order that's got a bunch of potholes in it.  And what I

3    mean by that is I say surrender at the facility, and he says,

4    oh, I don't have any means.  I can't get there.  Ultimately, the

5    inability to surrender to the institution, then he is to

6    surrender to the Marshal Service, but of course in that

7    scenario, the likelihood that he would get from here to there

8    quickly, probably is, shall we say, diminished.

9        MS. RIEWERTS:  Your Honor, shall I address the

10   defendant's arguments with regard to --

11       THE COURT:  Not yet.  Let's let her make them, and

12   then we will see where we are.

13       MS. RIEWERTS:  Thank you, Your Honor.

14       THE COURT:  Again, Ms. Suelau, you can jump in on

15   anything that's gone up to now.  Again, I've obviously

16   characterized where I understand you to be in terms of your

17   responses to various things.  If I've misstated that, you won't

18   be shy, I'm sure, and I'm certainly giving you the open

19   invitation to not be shy.

20       MS. SUELAU:  Thank you, Your Honor.  I will start with

21   the first, which just makes sense to go in that order in terms

22   of suitable facility.  I understood Your Honor to conclude that

23   the BOP is a suitable facility, and I would object to that

24   finding.  I don't think that there is evidence on the record to

25   support that the Government has made any showing that they can

21-cr-13-RM     Competency Hearing     08-07-2023

1   comply with the mandates of the statute, which are that the

2   facility is suitable to provide care or treatment given the

3   nature of the offense and the characteristics of the defendant.

4       And it further mandates that the AG shall, before

5   placing a person in that facility, quote, consider the

6   suitability of the facility's rehabilitation programs in meeting

7   the needs of the person.

8       THE COURT:  And all of those things are directed to

9   the attorney general.  They're not directed to me.

10       MS. SUELAU:  Your Honor, I would say in response to

11   that, that is true.  However, if not this Court's role to

12   enforce that statute, then whose?  If Mr. Cuetara's remedy is

13   not with this Court to make that finding, and Your Honor's place

14   within the statute is very clear at other places, then why is it

15   not that that -- it's this Court's role to ensure that that

16   facility is suitable?

17       THE COURT:  A couple of answers.  Number one, the

18   statute says what the statute says.  Number two, ultimately,

19   what you're suggesting takes the statute and turns it upside

20   down.  What I mean by that is the Bureau of Prisons, I don't

21   know, either for somebody in custody or out of custody, says

22   where to send him, and then before anybody can do anything, the

23   defendant has an absolute right to challenge the designation as

24   whether or not it's a suitable facility, and, you know, that's

25   just upside down and backwards to me.

21-cr-13-RM    Competency Hearing    08-07-2023

1     Ultimately, what it is is it's a mechanism for building

2  delay, for building -- and, well, for putting the Court in some

3  kind of a posture where I'm supposed to take evidence from the

4  BOP, I suppose, and you, I suppose, as to suitability?

5     And then number three, there really isn't a suitability

6  issue here, I don't think.  At least I don't see one.  When

7  we're talking about suitability, my understanding is we're

8  talking about suitability to achieve restoration, which means in

9  simple terms that the place has what it needs in order to

10  attempt to rehabilitate.

11     For example, a person is schizophrenic.  You can't send

12  him to, I don't know, some county jail in the middle of the

13  Arizona desert where you have some contract facility and there's

14  no psychiatrist and no medication.  Well, that makes no sense,

15  but there's nothing like that that's going on here.

16     You just don't want confinement.  That's the big issue.

17  It's not that confinement interferes with his ability to learn

18  or confinement interferes with his ability to communicate.  You

19  just don't want confinement.  But there's nothing that suggests

20  to me that there's anything -- if you put that to the side, that

21  there's anything that is a plausible or credible issue with

22  regard to suitability.

23     What they're trying to do is educate him.  What they're

24  trying to do is teach him.  Why is it not suitable to accomplish

25  that goal in confinement?  What you're saying to me is not --

21-cr-13-RM     Competency Hearing     08-07-2023

1    it's a bunch of three-card monte here.  It's not that the

2    facility is inappropriate for rehabilitation or -- not

3    rehabilitation, but restoration to competence.  It's, I don't

4    want him in custody, and so therefore I'm going to say that they

5    should do it better or do it elsewhere or whatever.

6            To me, it's just a way to get to the end result, which

7    I understand, and I appreciate the whys of it, but the whys of

8    it is to keep him out of custody.  Well, that's not going to

9    happen.  So, go ahead and make further record, and I will be

10   quiet.

11           MS. SUELAU:  Your Honor, the issue is not confinement.

12   The issue is confinement without rehabilitation.  The

13   constitutionality of this statute when evaluated by other Courts

14   have looked at, there is a reasonable purpose for that

15   confinement, that something is being done during that period.

16   And that's why Courts have said this statute is fine.

17           However, confinement without any rehabilitation,

18   meaning confinement without the ability to -- the Government

19   hasn't even made a basic showing that they have an ASL, let

20   alone a CDI interpreter available.  And if we take Dr. Pick,

21   Ms. Perez's, and Dr. Pollard's reports, each of them say, and

22   Dr. Pollard says it very clearly in his -- in Exhibit A at page

23   nine, that if any attempts are made, they would require the

24   assistance of a team of hearing and deaf sign language

25   interpreters.

21-cr-13-RM     Competency Hearing     08-07-2023

1      THE COURT:  Look, I hear you.  I hear you.  And I knew

2  what you were doing when you were doing it.  The Government

3  objected to what you were doing when you were doing it.  I had a

4  hearing to determine the issue of competence.  I did not set the

5  matter for a hearing on all of these other issues.  I have made

6  no finding that his opinion is correct with regard to those

7  other issues.  I've given the Government no opportunity to

8  respond with respect to his opinion on those other issues.

9      So, to sit there and say, oh, gee, the words came out

10  of his mouth, yeah, they did, and they came out of his mouth

11  because I said to Ms. Riewerts, yes, I understand, I will listen

12  to it, but that's not what we're here for today.

13      MS. SUELAU:  Your Honor, as a threshold matter, we

14  all, I think, accept that Mr. Cuetara is deaf.

15      THE COURT:  Absolutely.

16      MS. SUELAU:  And that he, I think, more than that --

17  well, all the experts opined that he is illiterate in English,

18  and also profoundly deficit in ASL.  So, whether or not the

19  recommendation of using a CDI team has been established, it

20  doesn't really matter, because all the evidence before this

21  Court is that at a minimum, he needs someone to communicate with

22  him.  And the Government has been on notice for two and a half

23  years from the -- Mr. Cuetara's very first hearing an ASL

24  interpreter found by the Court met with Mr. Cuetara and informed

25  counsel, the Court, and the Government, Mr. Cuetara does not

21-cr-13-RM     Competency Hearing     08-07-2023

1   understand ASL.

2          And so whether or not that was established at the

3   hearing or not, the Government has been put on notice that at a

4   minimum, he needs an ASL interpreter, and that that is likely

5   not going to be sufficient.

6          And yet -- so, it's not that the Government hasn't had

7   the opportunity.  I briefed this a month ago.  They've been on

8   notice for two and a half years.  I've flagged what the statute

9   requires of the attorney general.  And so what they're saying

10  today is, we've made phone calls to BOP facilities to get the

11  language for a surrender order without establishing that they --

12  or acknowledging that they have a statutory duty to ensure that

13  Mr. Cuetara can be cared for, at a minimum be cared for.

14         And in an incarceral setting, that requires things that

15  aren't just to do with rehabilitation.  That requires him

16  understanding where he needs to be and when.  Basic needs, how

17  to use the bathroom, how to get food.  I would say that under

18  any reading of the word "care" in any statute, those things are

19  encompassed within it.  And the Government has not made any

20  showing about that.

21         THE COURT:  Come on.  He is not a lobotomized

22  individual.  Let's just stop.  He doesn't know -- he can't be

23  taught where to use the bathroom?  Please.  I have found him to

24  be incompetent.  I also know this.  The crime that is charged

25  here involves the use of a computer.  I also know that he has an

21-cr-13-RM     Competency Hearing     08-07-2023

1   email address.  I also know that he has communicated about --

2   with counsel via text message.  I also know that he has had some

3   educational exposure a long time ago in community college.

4          I know that he lives not under his mother's roof,

5   although right now, under whose roof, who knows.  I also know

6   that he manages to have a job.  So, I have found him to be

7   incompetent.  I have not found him to be braindead.  And to say

8   to me, you know, oh my God, the BOP has to be able to show him,

9   and they can't show him where to go eat and where to go to the

10  bathroom, that's ridiculous.  It just is.

11         MS. SUELAU:  Your Honor, we're talking about a system

12  where there is verbal orders.  There is bells and things like

13  that that Mr. Cuetara can't hear.  So, the BOP would need to

14  establish that they can provide him with directions in a way he

15  can understand.

16         Your Honor is correct.  If given the directions in a

17  manner in which he understands, he can certainly follow

18  directions.  But they've not even established that they would

19  have someone available to show him things in a way that he can

20  understand just for basic care.  And then beyond that, to

21  provide rehabilitation.

22         THE COURT:  Restoration.

23         MS. SUELAU:  Restoration.

24         THE COURT:  We're saying the same concept.  I

25  understand what you're saying, but the concept is restoration.

Kevin P. Carlin, RMR, CRR

21-cr-13-RM    Competency Hearing    08-07-2023

1        MS. SUELAU:  Your Honor, I don't believe that the

2   Government has established they can meet their statutory

3   obligations here.  I think without them making a showing of --

4        THE COURT:  Show me anything that says they have to on

5   the front end of this.

6        MS. SUELAU:  Your Honor --

7        THE COURT:  I mean, you talked to me about they've had

8   two years.  I'm assuming you had two years to find some

9   authority for me to say, yeah, this statute says what it says,

10  but I can inject myself into it on the front end and whenever a

11  defense counsel says, hey, I want them to prove X, Y, and Z,

12  that I can order that.  Okay.  I'm assuming that time passes for

13  them suggests they're not finding stuff that's satisfactory.  I

14  make the same assumption as to you.

15       MS. SUELAU:  Your Honor, 4247(1)(a) makes clear that

16  identifying and contracting with the facility is mandatory.  It

17  says that the attorney general shall, before placing a person in

18  a facility pursuant to the provisions of 4241, consider the

19  suitability of the facility's rehabilitation programs in meeting

20  the needs of the person.

21       THE COURT:  And I assume they will.  Why should I

22  assume that they're not going to follow the law?

23       MS. SUELAU:  Your Honor, I believe it's this Court's

24  role to ensure that they will do that.  They've made no showing

25  that they can.  They've made a showing that Mr. Cuetara can

21-cr-13-RM     Competency Hearing     08-07-2023

1   self-surrender to one unnamed medical facility.

2          THE COURT:  Okay.

3          MS. SUELAU:  There is evidence -- you know, I

4   presented Your Honor with *United States versus Heyer*, which

5   demonstrated that they have difficulty in understanding and

6   treating deaf defendants.  Unless Your Honor has other questions

7   about suitability, I will move to --

8          THE COURT:  No.  Go ahead.  Move on.

9          MS. SUELAU:  I will move to the second part, which is

10  the reasonable period.  And I may have misheard Your Honor, but

11  my position is that the reasonable period is not reasonable

12  period after four months.  It is reasonable period as bounded by

13  four months.

14         THE COURT:  Okay.  Then I apologize for the

15  misstatement.  You are correct.  4241(d)(1) says, or such

16  reasonable period of time, comma, not to exceed four months.

17  And then following that, there is an additional reasonable

18  period of time in subsection two.  So, the term "reasonable

19  period of time" is part and parcel of the first four-month

20  period, and as well as being part and parcel of any theoretical

21  extension.

22         To me, this is -- again, in terms of the outcome, I

23  understand exactly what it is.  In terms of the reasonableness

24  of the request, I can't understand the logic.  The logic is I

25  should have a hearing before they have an opportunity to see

21-cr-13-RM    Competency Hearing    08-07-2023

1   him, work with him, evaluate him on their own, I should make --

2   I should tell them without the benefit of expertise on my part

3   what time I'm going to give them without knowing what time

4   they're going to ask for, use, take.

5        And we both know that if it's taken you two years of

6   interaction with your client to get to the point where we are

7   now, that the suggestion that somehow less than the initial

8   period I should cut it off is really designed to do one thing.

9   It's designed to say, okay, I'm just going to artificially

10  handcuff them and say, well, you get 30 days to restore him to

11  competency, and then I'm going to pull him out of custody.

12       Again, it's all designed to keep him out of custody,

13  because it's not like you're sitting here saying to me, oh, this

14  should only take two days.  You're not saying that.  You would

15  never say that.  In fact, you don't even believe that they can

16  do it in four months.  I'm not saying whether I do or don't, but

17  they get the chance to try without me coming in and just

18  artificially saying, you know what?  I'll give you 60 minutes to

19  restore him to competency, and if not, then I will just yank him

20  out.

21       You tell me the logic behind the request, if it's not

22  exactly what I'm saying, which is, you put some limit on it to

23  say, hey, I gave you 30 days, that's enough, now I gotta dismiss

24  the case.  That's what you're going after.

25            MS. SUELAU:  Your Honor, yes and no.  My position

21-cr-13-RM      Competency Hearing      08-07-2023

1    is --

2               THE COURT:  How about yes and yes?  Go ahead.

3               MS. SUELAU:  Well, no, because my position is that the

4    evidence we presented before the Court establishes that no time

5    is necessary, that it has been well established through

6    Dr. Pollard's testimony and other evidence before this Court

7    that Mr. Cuetara is not restorable.

8               THE COURT:  I had no such hearing for such purpose.  I

9    allowed you to put the evidence on, since he was here.  I

10   listened to it.  But to sit down and say that somehow evidence

11   presented for a purpose that was not relevant to the matter

12   before me is to be used now to say that the reasonable period of

13   time is no time?  That's really what you want me to say?

14              MS. SUELAU:  Your Honor, two responses to that.

15   First, I do think, you know, even if Your Honor wasn't

16   considering the evidence for that purpose, there is sufficient

17   evidence to establish that, but that's why I was asking for a

18   hearing on that issue.

19              And then we could have a specific hearing targeted to

20   that issue, because it's our position that there is -- we've

21   raised enough doubt that there is any possibility of Mr. Cuetara

22   being restored.  Therefore, no time is reasonable.  And this

23   goes back to, again, when Courts have analyzed this statute,

24   they've said the attorney general deserves the time to evaluate

25   this person.

21-cr-13-RM     Competency Hearing     08-07-2023

1      If there's sufficient evidence at this point, which is

2  my position that there is sufficient evidence at this point that

3  Mr. Cuetara will not be restored, and that's not -- that's based

4  on Dr. Pollard's testimony, who, again, you know, as Your Honor

5  is aware, Dr. Pollard is the one person who I was able to find,

6  and I believe the Government made efforts as well, who we were

7  able to find, who is able to make this evaluation.

8      And he is saying, I worked with this person on three

9  different occasions.  One occasion for the express purpose of

10  attempting to restore him, and there is a virtually zero

11  probability that he will be restored.  If that's the case, and

12  we know that now, then any period of time hereafter is not

13  justified within the statute, because Courts that have evaluated

14  the statute said the attorney general gets a chance.  The

15  attorney general now has evidence --

16      THE COURT:  I mean, look.  You're taking apples and

17  oranges here.  To the extent that Courts have said, you know,

18  they get a reasonable time, you're talking about cases where

19  somebody has, I don't know, sat for protracted amounts of time

20  in custody, and then after that, some Court has said, that's too

21  much.  Enough.  Enough.

22      Show me a Court that's done it on the front end.

23  Because the statute, frankly, says what happens if he can't be

24  restored.  It's not that he doesn't get committed to the

25  attorney general.  It's not that he gets turned loose.  It's

21-cr-13-RM    Competency Hearing    08-07-2023

1    that we then start into these other proceedings, dangerous to

2    others and the sexually dangerous provision.  I don't have the

3    quite correct language, but we all know what I'm talking about.

4         And, again, you wanted me to say, okay, we can do all

5    that in advance too.  Show me something that says that I can do

6    any of that and deprive the Government of the opportunity to

7    even try.

8         MS. SUELAU:  Courts that have declined to do so on the

9    front end have done so because there was a reasonable

10   relationship between the reasonable period of time that the

11   person is in custody --

12        THE COURT:  What case are you talking about?

13        MS. SUELAU:  Your Honor, one example would be *United*

14   *States versus Quintero* in the Ninth Circuit that recently

15   evaluated this, and they focused on the fact that this one thing

16   that alleviates constitutional concerns is the reasonable period

17   of time.

18        THE COURT:  And what's the facts of that case?

19        MS. SUELAU:  One moment, Your Honor.  I want to make

20   sure.  I have read so many cases on this --

21        THE COURT:  I know.  And I'm flipping through the

22   briefs, because I've got them too.

23        MS. SUELAU:  And this is 995 F.3d 1044, 2021, Ninth

24   Circuit.

25        THE COURT:  Yeah.  Okay.

21-cr-13-RM     Competency Hearing     08-07-2023

1     MS. SUELAU:  That was really just for the court

2  reporter.

3     THE COURT:  No.  I understand why.  I'm sorry.  Yeah.

4  It's a Court that's basically said, as you indicated, it's a

5  temporal limitation.  It doesn't say the Court steps in and

6  deprives the Government of the opportunity to even try.

7     MS. SUELAU:  Because, Your Honor, it is talking about

8  the commitment being justified by this goal, the reasonable

9  relationship between the custody and the potential restoration.

10  My position is that we have established here that there is no

11  reasonable -- there is no period of time, not reasonable -- no

12  period of time that will restore Mr. Cuetara to competency.

13     THE COURT:  My position is you've tried to jump the

14  gun and jam this issue in on the front end, and it does not

15  belong there.  It's not a front-end issue to me.  And I suppose

16  if you're asking, you know, what's your remedy, I don't know.

17  You can talk to your appellate people.  I don't know.  I'm not

18  here to tell you where to go from here.

19     I'm just saying ultimately, what you're saying to me is

20  that your position and your view is he can't be restored.

21  Therefore, he doesn't get committed, because I should decide now

22  even though they've never seen him, laid eyes on him, or touched

23  him, that because you presented a witness who said things that

24  weren't relevant to the issue that the hearing was about -- and

25  I don't mean -- that may be too strong.  It was not focused on

21-cr-13-RM     Competency Hearing     08-07-2023

1    the issue, which is is he competent or isn't he?

2         But instead wanted to expand that discussion so that I

3    could collapse the entirety of 4241 and its subsequent sections

4    into, hey, the judge on the front end, if the defense counsel

5    wants to say, hey, you know, whatever, then we should have a

6    hearing and determine whether -- and determine, I don't know,

7    through some magical power without giving them the ability to

8    even touch the guy, that no, you don't get that chance in this

9    case.

10        I mean, I grant you Mr. Cuetara's case is very

11   different from that which we ordinarily see.  But you can do the

12   same thing with somebody with severe mental illness.  You could

13   do the same thing -- I don't know.  I mean, it's not unheard of.

14   In fact, I hear of it all the time, oh, the BOP doesn't know how

15   to treat this, or the BOP doesn't know how to treat that, and

16   everybody who has a competency hearing, you move for a

17   competency hearing, and then it becomes a disguise motion to

18   dismiss.

19        I'm not doing that.  You want -- I mean, that's what

20   it's doing.  It's taking 4241 and saying, hey, we can use this,

21   if we can get the judge to go along with it, but just dismiss

22   the case.

23        MS. SUELAU:  Your Honor, the relief I am specifically

24   requesting in my brief is a hearing precisely on what Your Honor

25   is talking about, which is a hearing to determine the time

21-cr-13-RM     Competency Hearing     08-07-2023

1   necessary to make the determination of the reasonable period of

2   time.

3         I think without that, without a finding of the

4   reasonable period, then as I've stated elsewhere, I think that

5   violates Mr. Cuetara's constitutional rights.  He has

6   substantive due process rights that ensure that he would be --

7   won't be confined without purpose.  He has Eighth amendment

8   rights against cruel and unusual punishment.  So, I understand

9   Your Honor to be saying --

10         THE COURT:  What I'm saying is a couple of things.

11   One of the things I want to make sure I'm saying is that you

12   want to say it's substantive due process, whatever that is, that

13   comes down to shocking the conscience.  I don't know that that's

14   there.  In fact, I'm telling you it's not.  But if you're not

15   talking about procedural due process, which I would have a hard

16   time understanding how it was, since there's a statutory

17   procedure.

18         But beyond that, there's no Eighth amendment issue

19   here.  There's no Eighth amendment issue raised, first.  And

20   second, even if there were, I'm not punishing him.  I'm trying

21   to restore him to competency.  So, again, I'm not going to let

22   it drift off into other areas that have never been brought up,

23   never raised, and really aren't what anyone has said up to now.

24   So, anyway, go ahead.

25         MS. SUELAU:  I will just conclude with -- and I did

21-cr-13-RM    Competency Hearing    08-07-2023

1   cite this in my brief, but *United States versus Anderson*, where

2   when I'm talking about cases that talk about 4241 being

3   constitutional, in light of due process challenges, it's because

4   it's permissible to hold the defendant for a reasonable period

5   of time, examine whether there's a substantial probability that

6   he will attain capacity, so long as that procedure has a

7   reasonable relationship to the commitment.

8         I think without a finding that the facility is

9   suitable, without a finding that Mr. Cuetara will -- what the

10   reasonable period of time is, then that flies afoul of what the

11   considerations were in *Anderson*.

12         And as to number four, if Your Honor chooses to go that

13   route, I don't have any objection to the -- whatever Your Honor

14   determines to be the appropriate procedure for self-surrender.

15   And it's my understanding that Mr. Cuetara can, if ordered, get

16   himself to -- with the help of a friend or a family member, get

17   himself to Butner or wherever he's ordered, albeit our position

18   is that that's not a suitable facility.

19         THE COURT:  I understand.  Government?

20         MS. RIEWERTS:  Your Honor, I am first going to address

21   the issue of suitable facility.  The Government agrees that the

22   statute says what it says.  It mandates that the attorney

23   general shall hospitalize the defendant for treatment in a

24   suitable facility pursuant to 18 United States Code Section

25   4241(d).

21-cr-13-RM    Competency Hearing    08-07-2023

1      With regard to the suitable facility, the Government is

2  not required to make a basic showing, either in the statute or

3  in case law, that the Bureau of Prisons, FMC, or USMCFP is a

4  suitable facility, or whichever facility he's designated to.

5      Thirdly, with regard to my conversation with Bureau of

6  Prisons SAUSA Genna Petre at Butner, she stated that they have

7  worked with deaf defendants in competency restoration matters.

8  She even gave an example of one defendant who was referred for

9  competency restoration treatment who was blind and deaf and

10 didn't speak American Sign Language.  A CDI interpreted in that

11 case to the ASL interpreter to the evaluator.

12     Additionally, the Bureau of Prisons SAUSA Petre

13 confirmed is also capable of contracting with different entities

14 to perform competency restoration.

15     THE COURT:  I am no more willing to weigh in on the

16 merits of the issue for you than I was for her.  I understand.

17 I suppose in my view, I'm giving you the opportunity to do what

18 I gave her the opportunity to do, which is to speak to it.  But

19 just to be clear, I am not going to weigh what your people say

20 against what her people say and then make some determination as

21 to suitability, because I don't think that that is my role.  I

22 don't think that is within my authority at this point.

23     MS. RIEWERTS:  And the Government is not asking Your

24 Honor to do that.  I just wanted to point out to Your Honor that

25 there is information that has been received by me that they are

21-cr-13-RM     Competency Hearing     08-07-2023

1   not a blank slate when it comes to working with deaf defendants.

2          With regard to the defendant's arguments that if the

3   defendant is found incompetent, the Court should stay the order

4   of commitment until the Government demonstrates both the

5   availability of a facility for hospitalization and hold a

6   hearing to determine the reasonable period of time necessary to

7   determine whether Mr. Cuetara will attain capacity, neither 18

8   United States Code Section 4241 nor Tenth Circuit case law call

9   for the additional measures requested by defense counsel.

10          There is a case, *United States versus Deters*, or

11   *Deters*, D-E-T-E-R-S, that is referenced by the defendant in his

12   briefing.  It describes the three-step system for determining

13   the competency of the defendant to stand trial.  The second step

14   the Tenth Circuit describes in *Deters* is determining whether

15   there is a reasonable cause to believe the defendant may

16   presently be suffering from a mental disease or defect, and if

17   so, ordering -- I'm sorry.

18          That is step one in ordering the psychiatric or

19   psychological exam for the defendant.  Step two involves of

20   course conducting a hearing and using the psychological reports

21   to determine whether the defendant is able to understand the

22   nature and consequences of the proceedings against him.  And if

23   the defendant is incompetent to stand trial, as is clear, the

24   Court must order the defendant hospitalized for a reasonable

25   period of time up to four months, for the purpose of determining

21-cr-13-RM      Competency Hearing      08-07-2023

1   whether there is a substantial probability that the defendant

2   will become competent in the foreseeable future.

3        If the Court finds that the substantial probability

4   exists, the step two confinement may be extended for an

5   additional reasonable time period to allow the defendant to gain

6   the capacity for trial.

7        Step three of course involves the Court determining

8   whether the defendant has become competent to stand trial, or

9   alternatively, is a longterm incompetent requiring indefinite

10  hospitalization.  Obviously, we're not there yet.  But I would

11  submit to the Court that in terms of the defendant's argument

12  that the defendant is entitled to various hearings prior to

13  being taken into attorney general custody, the Government's

14  argument is actually supported by the Tenth Circuit unpublished

15  case *United States versus Anderson* that the defendant cites in

16  its briefing.

17       There, the defendant argued that if 4241(d) was read to

18  require mandatory commitment, it violated her constitutional

19  rights because the improbability of improvement is necessary to

20  preserve due process.  Citing *Jackson versus Indiana*, decided in

21  1972 by the Supreme Court, which resulted in 4241(d)(2) being

22  revised by the legislature, the Supreme Court explained that it

23  is permissible to hold a defendant for a reasonable period of

24  time to examine whether there is a substantial probability that

25  he or she will attain capacity, so long as the procedure has a

21-cr-13-RM     Competency Hearing     08-07-2023

1   reasonable relation to the purpose of the commitment.

2          The Tenth Circuit opined in *Anderson* that the language

3   in Section 4241(d) is unambiguous and mandatory.  And, again,

4   this is an unpublished case that after finding that the

5   defendant was mentally incompetent to stand trial, the district

6   court was required to commit the defendant to the attorney

7   general's custody.

8          The Tenth Circuit wrote the defendant turns the statute

9   on its head advocating a scheme that requires an evidentiary

10  hearing about whether her condition was amenable to treatment,

11  and whether with treatment there was a substantial probability

12  that she could attain capacity to stand trial in the foreseeable

13  future.  Congress chose differently.

14         So, Your Honor, the Government's position is that the

15  defendant is not entitled to these additional hearings which he

16  requests, and that the Court should impose an order committing

17  the defendant to the custody of the attorney general, as we

18  discussed earlier.

19            THE COURT:  In terms of the constitutionality?

20            MS. RIEWERTS:  Your Honor --

21            THE COURT:  I don't think that dog hunts, simply

22  because the way it's presented to me is somewhat circular.  It's

23  essentially, well, if I don't have the hearing on the front end,

24  then it's unconstitutional as applied to him, but he doesn't

25  have any statutory right to the hearing on the front end,

21-cr-13-RM     Competency Hearing     08-07-2023

1   constitutionally or otherwise.

2          I just don't think there's anything here.  There's

3   certainly not a due process argument.  I fail to see how there's

4   a substantive -- I should say there is certainly not a

5   procedural due process argument.  I fail to see how there's a

6   substantive due process argument with respect to making an

7   attempt to restore someone to competency.  And in terms of

8   Eighth amendment, as I said, it wasn't raised.  And beyond that,

9   I'm not punishing him anyway.  I'm simply trying to restore him

10  to competence.  So, I don't know that there's anything to say

11  about it, other than -- but I will give you the opportunity.

12         MS. RIEWERTS:  Your Honor, the Government agrees that

13  there's neither a substantive due process argument or a

14  procedural due process argument, and that the statute is plain

15  in its language, and under the Tenth Circuit case law, supports

16  the Government's position.

17         THE COURT:  All right.  I earlier gave my indication

18  as to what the order would look like.  I can tell you that it

19  will look substantially as I have indicated.  To be clear, I

20  reject the notion that there can be, should be, must be, or will

21  be a hearing in advance of commitment either to prove

22  suitability or to determine the reasonable period of time that

23  is necessary.

24         As I've said, this is trying to front-load things in a

25  way that basically avoids the statute and permits defendants to

21-cr-13-RM    Competency Hearing    08-07-2023

1   essentially be asking me to dismiss the case at this juncture,

2   because there's no ability to restore the individual to

3   competency without giving the Government an opportunity to even

4   try.

5        And I just, I don't accept the reasoning.  I don't

6   accept the logic.  I don't accept the interpretation of the

7   statute.  I understand the tactic, but I'm not having such a

8   hearing.  I don't think one is required.  I don't think one is

9   called for, and I don't have the authority to do it in any

10  event.

11       So, the suitability request is denied.  The reasonable

12  period request is denied.  The claim that the statute is

13  unconstitutional as applied without the suitability

14  determination and the reasonable period of time determination is

15  denied.

16       As I indicated before, I do intend to issue the order

17  subject to what happens on Wednesday -- Wednesday at 2 o'clock.

18  As I said, if he shows up, I will turn him around.  You will be

19  here in this courtroom for less than a minute.  If he does not

20  show up, you will still be in this courtroom for less than a

21  minute, but what will happen is that a bench warrant will issue.

22       MS. RIEWERTS:  Your Honor, may I be heard briefly with

23  regard to an update?  And, again, this is neither here nor

24  there.

25       THE COURT:  Why not?  We're here.  You've got some

21-cr-13-RM    Competency Hearing    08-07-2023

1    kind of an important thing on your phone?

2            MS. RIEWERTS:  Your Honor, I apologize.  I received --

3            THE COURT:  No.  There's no reason to.  I'm just being

4    difficult.  Go ahead.

5            MS. RIEWERTS:  I did receive an email from the FBI

6    case agent in this case, and just to provide a brief update to

7    Your Honor and Ms. Suelau, he did speak with Ken Stock, who

8    confirmed that Mr. Cuetara is not at the house.  And he

9    believes, again -- I understand this is neither here nor there,

10   and we will see what happens on Wednesday -- that the defendant

11   left sometime over the weekend with his mother to travel to

12   Mexico, and confirmed that Pretrial Services Officer Jake Smith

13   was also at the house today, and all this information was

14   relayed to him.

15           THE COURT:  Okay.

16           MS. RIEWERTS:  Thank you.

17           THE COURT:  And, of course, you know, there's so

18   many -- obviously there's so many violations of release:

19   changing residence without advising probation, leaving the

20   district, failure to appear in court.  You know, if he doesn't

21   show up, it makes it -- it's the easiest way to come to the

22   conclusion that he is elsewhere -- or, let me change that.  If

23   he doesn't show up, he's in violation of his bond, and all the

24   rest of it can be proved, disproved, whatever, somewhere later

25   down the road.

21-cr-13-RM     Competency Hearing     08-07-2023

1   Path of least resistance is simple.  Either he walks

2 through the door or he doesn't.  And we'll see.  I wouldn't bet

3 on him walking through the door, though.  Anything else?

4   MS. RIEWERTS:  Nothing further, Your Honor.  Thank

5 you.

6   THE COURT:  Ms. Suelau?

7   MS. SUELAU:  Your Honor, what is three-card monte?

8   THE COURT:  Ride the Colfax bus and you'll see, but

9 there used to be a guy sitting in the back who would do it.

10 Three-card monte is three cards face down, three kings -- let's

11 say two kings and an ace.  Which one is the ace?  And then the

12 person moves and shuffles them back and forth.  It's also, you

13 know, shell game where you move the shell.  Where is the peanut?

14 Google it.  Or ride the Colfax.  You will find somebody playing

15 three-card monte.

16   Unless it's the kind of thing where I'm just simply

17 dating myself, because it used to be something that was known.

18 And in that event, it's simply an old-man memory that doesn't

19 exist anymore.  But I think there's still three-card monte, and

20 people making money on it.  Anything else?

21   MS. SUELAU:  No.  Thank you.

22   THE COURT:  Recess.

23  (Proceedings concluded at 3:15 p.m.)

24

25

Kevin P. Carlin, RMR, CRR

1                    REPORTER'S CERTIFICATE

2

3

4          I, KEVIN P. CARLIN, Official Court Reporter for the

5    United States District Court for the District of Colorado, a

6    Registered Merit Reporter and Certified Realtime Reporter, do

7    hereby certify that I reported by machine shorthand the

8    proceedings contained herein at the time and place

9    aforementioned and that the foregoing pages constitute a full,

10   true, and correct transcript.

11          Dated this 16th day of August, 2023.

12

13

14

15

16          _____
            Kevin P. Carlin, RMR, CRR
17          Official Court Reporter

18

19

20

21

22

23

24

25

                    Kevin P. Carlin, RMR, CRR